**Curtis PARRISH, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 45S00–8603–CR–301.

Supreme Court of Indiana.

Dec. 22, 1987.

J. Michael Katz, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal following conviction by a jury of the offenses of rape, class A felony, and battery, class C felony. Concurrent sentences of twenty years and five years respectively were imposed.

The sole issue raised for our consideration is whether the State presented sufficient evidence of penetration to support the rape conviction.

These are the facts which tend to support the determination of guilt: Appellant and P.T. had once shared a relationship and residence. Their relationship was tumultuous, often involving violent episodes. Testimony revealed that P.T. had once chased appellant from the bedroom with a handgun and fired at least three shots at him as he fled through the back yard. She had also cut him with a butcher knife. Appel-

lant had previously fired shots into P.T.'s house, breaking all the windows. He had also beaten her seriously enough to require hospitalization.

As of December 15, 1984, it had been more than a year since P.T. and appellant lived together. At approximately 6:45 p.m. that day appellant knocked on P.T.'s door. She called a neighbor who was a police officer in order to scare appellant away. The officer arrived, didn't see appellant, and left. A few minutes later appellant entered the house through a back window, chased P.T. upstairs, and shot her in the shoulder. P.T. testified that she followed appellant back downstairs after the shooting, that he started to leave, then changed his mind and raped her on the couch.

I.C. 35–42–4–1 states that "[a] person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when ... the other person is compelled by force or imminent threat of force ... commits rape...." The term "sexual intercourse" is defined in I.C. 35–41–1–26 as "an act that includes any penetration of the female sex organ by the male sex organ." Appellant asserts that the language used by P.T. in her testimony was not precise enough to satisfy the definition of "sexual intercourse", that there was no medical or other corroborative evidence of rape, and that therefore his conviction should be overturned.

▆▆▆ The uncorroborated testimony of a rape victim is sufficient to support a conviction. *Shaw v. State* (1986), Ind., 489 N.E.2d 952. However, the prosecution, having the burden of proof, has the responsibility to assure that the testimony of the witness is clear on the issue of sexual intercourse. *Chew v. State* (1985), Ind., 486 N.E.2d 516.

The pertinent testimony concerning the rape charge reads as follows:

"He got upstairs on me so quick and I couldn't get the other phone, I couldn't get to it and in the meantime, Curtis was over me and the gun was right here and he had knocked me down on the bed and then he shot me on the shoulder, then we went downstairs and I followed him, I'm bleeding and he was on his way out the door and then he remembered, he had said what he come over here for was to get him a nut, and that's when he raped me on the couch downstairs. After that, it only took a few minutes, and he reached his climax and then he went back out that window."

\* \* \* \* \* \*

"And when you say that he had intercourse with you, could you describe that in more detail exactly what did he do to you and what did he do himself?"

"Okay. He was going to go out the window. Then he remembered what he came over there to do. Then he says, I almost forgot what I came over there to do. He said I came over there to get me a nut. Then Curtis pushed me down on the couch and I had those black pants on with a body suit and he just unzipped my pants and he took his penis out and merged and he climaxed and then he went out and I'm laying up, up there and this is after I was shot."

The testimony clearly reveals that appellant had unzipped P.T.'s pants and removed his penis from his own pants. The question then becomes whether the term "merged" is adequate to convey to the jury that appellant placed his penis in P.T.'s vagina. We find that it does convey that meaning within the context in which it was used.

The 1982 version of Webster's New World Dictionary of the American Language, Second College Edition, indicates that the word "merge" is a derivative of the Latin word *mergere*, meaning to dip, plunge or sink. It also gives two definitions, one being "to lose or cause to lose identity by being absorbed, swallowed up, or combined", the other being "to join together; unite; or combine." *Id.*

Some common associations with the Latin derivatives would seem to be dipping a candle, a dip or plunge into a pool, plunging an object into something, or sinking an object into water. All of these encompass the concept of one object entering another. Absorbing, swallowing and combining also

carry this connotation. We also often think of the words "join together", "unite" and "combine" as being associated with marriage and becoming one.

While it would certainly have been more precise if the witness had used terminology such as "he put his penis in my vagina", the word "merged" was sufficient to demonstrate the same event given the context in which it was used and the meanings commonly attributed to the word.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.